United States District Court
Southern District of Texas
**ENTERED**
July 24, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BRITTANY ELLIOTT, § <br>    Plaintiff, § <br> § <br> V. § <br> ANDREW SAUL, COMMISSIONER OF § <br> SOCIAL SECURITY ADMINISTRATION, § <br> § <br>    Defendant. § | CIVIL ACTION NO. H-18-4067 |

**MEMORANDUM AND ORDER GRANTING PLAINTIF'S
MOTION FOR SUMMARY JUDGMENT**

Before the Court in this social security appeal is Defendant's Motion for Summary Judgment (Document No. 21), and Plaintiff's cross Motion for Summary Judgment (Document No. 22). After considering the cross motions for summary judgment, each side's response to the other's motion, the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and this proceeding is REMANDED to the Commissioner for further proceedings.

I.  **Introduction**

Plaintiff Brittany Elliot ("Elliot") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits. Elliot raises five claims in this appeal: (1) that "[t]he ALJ erred in his determination that Ms. Elliott's impairment(s) failed to equal a listing. The evidence of record demonstrates Ms. Elliott medically equaled multiple listings under 20 CFR §

1

404.1526;" (2) that "Ms. Elliott is functionally disabled from any occupation. The ALJ incorrectly determined the claimant's RFC [residual functional capacity] at 'Sedentary;'" (3) that "[t]he ALJ's RFC finding failed to comply with SSR 96-8p;" (4) that "[t]he ALJ failed to discuss or discredit, and therefore ignored, Dr. Osborne's consultative psychological opinion that Ms. Elliott would struggle to deal with the normal pressures of a competitive work setting;" and (5) that "[t]he ALJ violated SSR 96-6p and 20 C.F.R. § 404.1527(c) in failing to even address, the opinions of the State agency non-examining physicians." The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's decision, including his RFC, and that the ALJ properly applied the applicable Listings and regulations.

## II.   Procedural History

On or about January 3, 2013, Elliot filed an application for disability insurance benefits ("DIB"), claiming that she had been unable to work since April 25, 2012, as a result of interstitial cystitis and chronic pain. The Social Security Administration denied her application at the initial and reconsideration stages. After that, Elliot requested a hearing before an ALJ. The Social Security Administration granted her request and the ALJ, Richard A. Gilbert held a hearing on September 3, 2014, at which Elliott's claims were considered de novo (Tr. 39-62). On November 20, 2014, the ALJ issued his decision finding Elliott not disabled. (Tr. 84-94). Elliott sought review of that decision with the Appeals Council. On February 19, 2016, the Appeals Council remanded the case to the ALJ with instructions for the ALJ to: (1) obtain additional evidence concerning the claimant's impairments; (2) further evaluate the claimant's subjective complaints; (3) obtain, if necessary, evidence from a medical expert to "clarify the nature and severity of the claimant's impairment;" (4) give further consideration to the claimant's maximum residual

2

functional capacity; and (5) obtain supplemental evidence from a vocational expert. (Tr. 101-103). Upon remand, the ALJ re-convened the hearing on March 23, 2017, and September 6, 2017. (Tr. 26-62; 1879-1940). On October 23, 2017, the ALJ again concluded that Elliott was not disabled. (Tr. 11-18). Elliott's subsequent request for review of that adverse decision was denied (Tr. 1-3), and the ALJ's October 23, 2017, decision thus became final.

With this proceeding, Elliott appeals the October 23, 2017, decision of the ALJ. 42 U.S.C. § 405(g). Both sides have filed a Motion for Summary Judgment, each of which has been fully briefed. The appeal is now ripe for ruling.

**III.     Standard for Review of Agency Decision**

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340,

343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.' " *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

### IV.     Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

4

> she is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

> The Commissioner applies a five-step sequential process to decide disability status:
>
> 1. If the claimant is presently working, a finding of "not disabled" must be made;
>
> 2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;
>
> 3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
>
> 4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
> 5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v.*

*Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

Here, the ALJ determined at step one that Elliott had not engaged in substantial gainful activity since April 25, 2012, the alleged onset date (Tr. 13, Finding 2). At step two, the ALJ determined that Elliott had the following severe impairments: interstitial cystitis, history of dry eyes, attention deficit hyperactivity disorder (ADHD), depression, photophobia, anxiety, and a history of marijuana use (Tr. 13, Finding 3). At step three, the ALJ determined that Elliott did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listings 1.02, 2.07, 6.06, 12.04, 12.06 and 12.11 (Tr. 14-15, Finding 4). Prior to consideration of steps four and five, the ALJ found that Elliott had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) "except lifting and carrying 10 pounds occasionally and 5 pounds frequently; standing and walking about two hours in an eight hour day; sitting about six hours in an eight hour day; in an environment with readily available restroom facilities where she will need to take 3 to 4 bathroom breaks lasting five minutes in duration; avoiding driving at night; avoiding a work environment with concentrated exposure to bright or florescent lights; limited to work that requires occasional reading of fine print; can understand, remember, and carry out short and simple instructions; can maintain attention and concentration for extended periods on simple tasks; limited to simple tasks; and limited to routine, repetitive tasks." (Tr. 15, Finding 5). At step four, using that RFC, the ALJ determined that Elliott was unable to perform her past relevant work as a receptionist or administrative claims assistant (Tr. 17, Finding 6). At step five, using that same RFC, and relying on the testimony of a vocational expert, the ALJ concluded that there were jobs that existed in significant numbers in the national economy Elliott could perform,

including order clerk, charge account clerk, and sorter, and that Elliott was, therefore, not disabled. (Tr. 17, Finding 10).

In this appeal, Elliott raises five issues: that the ALJ erred in his assessment that she did not meet Listing 12.04 for depressive disorder; that the ALJ's RFC determination is not supported by the record, and is inconsistent with the opinions of three consultative experts; that the ALJ's RFC does not contain a function-by-function assessment of her physical and mental abilities; that the ALJ failed to discuss the opinions of a consultative psychologist; and that the ALJ failed to discuss the other expert medical opinions in the record.

## V.     Discussion

Having considered the parties' arguments, the evidence in the record, and the ALJ's October 23, 2017, decision, the Court concludes, for the reasons that follow, that the ALJ's determination that Elliott did not meet or equal Listing 12.04 is supported by substantial evidence, but that the ALJ's consideration of the opinions of the various consultative experts is lacking -- and sufficiently so -- to warrant remand.

### A.     Step Three -- Listing 12.04

In her first claim, Elliot argues that the ALJ erred in his determination that her impairment(s) did not meet or equal Listing 12.04. In support of that argument, Elliott points to evidence in the record she claims the ALJ should have credited in order to find that she meets or equals Listing 12.04.

To meet a listing in Appendix 1, an impairment "must meet *all* of the specified medical criteria" of the particular listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). In determining that Elliot did not meet Listings 12.04, 12.06 and 12.11, for affective disorders, anxiety disorders, and

7

neurodevelopment disorders, the ALJ concluded, based on the testimony of a medical expert (Dr. Tarrand), that Elliot did not meet the "A" or "B" criteria of Listing 12.04, 12.06 and 12.11. In doing so, the ALJ wrote:

> Both medical experts testified that none of the claimant's impairments meet or equal any listing. Dr. Anigbogu testified that he especially considered sections 1.02, 2.07, and 6.06, but the claimant does not have the specific requirements to meet or equal said listings.
>
> Dr. Tarrand testified that the claimant does not have a severe mental impairment. She said the claimant would not meet the "A" criteria of 12.04, 12.06, and 12.11. She said the claimant would only have mild to no limitations. However, giving the claimant the benefit of the doubt, the undersigned finds the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.11. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in broad area[s] of functioning, which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is serious limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.
>
> In understanding, remembering, or applying information, the claimant has a mild limitation. In interacting with others, the claimant has a mild limitation. With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. As for adapting or managing oneself, the claimant has experienced no limitation.
>
> The claimant reported she does household chores including sweeping, mopping, cleaning the counter and dusting. She drives a vehicle. She takes care of her children. She plays with her children. She takes them to a park. She teaches yoga 3 to 4 hours a week. She attends her son[']s sporting events. The undersigned notes that teaching yoga is inconsistent with her subjective complaints.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.
>
> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

8

> Because the claimant's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation. The undersigned has also considered whether the "paragraph C" criteria were satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

(Tr. 14). Elliott takes issue with the ALJ"s decision at step three, arguing that the record contains evidence of her depressed mood, change in weight, sleep disturbance, decreased energy, and difficulty concentrating or thinking. But, as referenced by the ALJ in his decision, Dr. Nancy Tarrand, a board-certified psychiatrist, testified at the hearing on March 23, 2017, that there was no evidence in the medical records of "any 12 consecutive months of reporting of the A criteria at a listing level." (Tr. 1927).[1] Dr. Tarrand's testimony is substantial evidence that supports the ALJ's decision at step three.[2] The contrary medical expert evidence in the record Elliott points to,

---

[1] Dr. Tarrand also testified: "I looked at a couple of different listings. I looked at depressive disorder, for which at times she reports some symptoms and other times does not. Her anxiety again is reported sometimes, and other times not. On both of those, I would not say she actually met the A criteria, but *at times* appears to equal the A criteria." (Tr. 1927, emphasis added).

[2] Listing 12.04 provides for presumptive disability for depressive disorders if the criteria set forth in A and B, or A and C is satisfied:
A. Medical documentation of the requirements of paragraph 1 or 2:
    1. Depressive disorder, characterized by five or more of the following:
        a. Depressed mood;
        b. Diminished interest in almost all activities;
        c. Appetite disturbance with change in weight;
        d. Sleep disturbance;
        e. Observable psychomotor agitation or retardation;
        f. Decreased energy;
        g. Feelings of guilt or worthlessness;
        h. Difficulty concentrating or thinking; or
        i. Thoughts of death or suicide.
AND
B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
    1. Understand, remember, or apply information (see 12.00E1).
    2. Interact with others (see 12.00E2).
    3. Concentrate, persist, or maintain pace (see 12.00E3).
    4. Adapt or manage oneself (see 12.00E4).
OR
C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
    1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
    2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).
20 C.F.R. § Pt. 404, Subpt. P, App. 1

9

including the opinion of Dr. Osborne that she would likely struggle to deal with the normal pressures of a competitive work setting (Tr. 1554), does not speak to any part of the paragraph A or paragraph B criteria in any of the applicable listings. In addition, as testified to by Dr. Tarrand, while some of the paragraph A criteria presented itself in Elliott's medical records, the paragraph A criteria was not met for the requisite, durational 12 month period of time. The medical evidence cited to by Elliott simply does not evidence or show that Elliott met or equaled all the "paragraph A" criteria for Listing 12.04 (or any other listing) for a period of 12 months or more. This first issue is therefore rejected.

### B. Medical Opinions

In Elliott's next four claims, she complains, in one way or another, about the ALJ's consideration of the expert medical opinions in the record. In particular, Elliott complains that the ALJ failed to fully and properly consider the opinions of three medical experts who conducted consultative examinations/evaluations of her. Those three consultative examiners/evaluators are: Dr. Arthur Hadley, who conducted an internal medicine evaluation of Elliott on June 22, 2016; Michael Osborne, Ph.D. who conducted a psychological evaluation of Elliot on July 15, 2016; and Dr. Farzana Sahi, who conducted an internal medicine consultative examination of Elliott on June 2, 2017. These evaluators found that Elliott's interstitial cystitis and/or depression affected her ability to engage in work-related activities. Dr. Hadley, while finding that Elliott was "physically capable of performing well at any level," also concluded that Elliott's "constant pain and need to void constitutes a nuisance, not only for her, but also for her employer." (Tr. 1515). Dr. Osborne, who conducted a wide-range of psychological tests in connection with his evaluation of Elliott, concluded that Elliott "would struggle to deal with the normal pressures of a competitive work setting," and that "[t]he combination of her medical problems and AD/HD probably would

interfere with her ability to sustain concentration and persist in work-related activity at a reasonable pace." Dr. Sahi, following his examination, and noting Elliott's interstitial cystitis and her "[s]evere psychological disorder," concluded that Elliott had a "severe restriction," and could not "do 8 hour work." (Tr. 1868, 1870). The opinions of Dr. Hadley and Dr. Osborne were barely mentioned by the ALJ in his decision, and there was no mention *at all* of Dr. Sahi's opinion.

> In giving "little" weight to the opinions of Dr. Hadley and Dr. Osborne, the ALJ wrote:
>
> The undersigned has considered the consultative examination of June 22, 2016. The examiner opined that the need for frequent restroom breaks would make work difficult (22F). The undersigned gives little weight to this opinion. As Dr. Anigbogu explained, this is not supported by urology clinical notes, This is inconsistent with the examiner[']s medical expertise. No pelvic exam was conducted. This is based solely on the claimant's subjective complaints. The undersigned has considered the mental consultative examination of July 15, 2016. The examiner opined that the claimant would struggle with the normal pressure of a competitive work setting. However, little weight is given to this opinion. This is inconsistent with Dr. Tarrand's testimony and her ability to teach yoga. This conclusion is based on the claimant's subjective complaints.

Tr. 16. This explanation by the ALJ of the weight afforded the opinion of Dr. Hadley, because it was not mere boilerplate and was made by reference to the record and the contrary opinions of Dr. Dr. Anigbogu, is generally sufficient under *Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017). So too is the explanation provided by the ALJ for the little weight he gave to Dr. Osborne's opinion that Elliot "would struggle with the normal pressure of a competitive work setting." Where the ALJ erred is in his failure to consider Dr. Sahi's opinion at all, and in his failure to consider *all* of Dr. Osborne's opinions – not just his opinion that Elliot "would struggle with the normal pressure of a competitive work setting."

The Commissioner argues in its briefing that the ALJ's failure to mention Dr. Sahi's opinion is insignificant because all Dr. Sahi opined about was a vague "severe restriction." The Commissioner further argues that even if the ALJ didn't mention all aspects of Dr. Osborne's

11

opinions, his stated rationale for giving little weight to Osborne's opinion – Dr. Tarrand's contrary opinion -- applies across-the-board to any and all of Osborne's opinions. Those arguments ignore the fact that the ALJ only mentioned that one aspect of Dr. Osborne's opinion. In addition, those arguments ignore the functional assessment made by Dr. Sahi in 2017, that Elliott could not "do 8 hour work" (Tr. 1870), as well as Dr. Osborne's opinion that it was the combination of Elliott's medical problems and her "AD/HD [that] probably would interfere with her ability to sustain concentration and persist in work-related activity at a reasonable pace." Despite the ALJ's reliance on Dr. Tarrand's testimony and opinions, Dr. Tarrand did not speak to that part of Dr. Osborne's opinion. In addition, Dr. Tarrand made it clear during her testimony that opinion was only based on Elliott's psychiatric problems and not the combination of Elliott's physical and psychiatric problems, as was considered by Dr. Osborne. (Tr. 1929) ("And, I'm not considering her medical problems. . . "I am not combining the physical symptoms."). Here, where the ALJ only considered part of Dr. Osborne's opinion, and did not mention Dr. Sahi's opinion at all, it cannot be said that the ALJ considered all the expert medical opinions in the record, as is required under *Kneeland*. It also cannot be said that the ALJ's stated reason for giving little weight to Dr. Osborne's opinion – it being inconsistent with Dr. Tarrand's testimony – is consistent with the testimony of Dr. Tarrand. Those errors in the ALJ's consideration of the expert medical opinions, particularly where the three consultative evaluations all supported additional work-related restrictions that than found by the ALJ, warrant remand for further consideration of the consultative expert medical opinions.

**VI. Conclusion and Order**

Based on the foregoing, and the ALJ erred in his consideration of the expert medical opinions in the record, the Court

ORDERS that Plaintiff's Motion for Summary Judgment (Document No. 22) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 21) is DENIED, and the decision of the Commissioner is REMANDED for further consideration of the expert medical opinions in the record.

Signed at Houston, Texas, this __24__ day of July, 2020.

*Frances H. Stacy*

_____
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE